**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
AT ST. LOUIS**

David L.Bueker,                            )
On behalf of himself                       )
and all others similarly situated,         )
                                           )
      Plaintiff                          )
                                           )
v.                                         )     Case No.  4:24-cv-00447
                                           )
Keller Williams Realty, Inc.,              )     JURY TRIAL DEMANDED
Serve Registered Agent                     )
Cogency Global Inc.                        )     COMPLAINT – CLASS ACTION
406 N. Main Street, Suite B                )
Rolla, MO 65401                            )
                                           )
      Defendant                          )

**CLASS ACTION COMPLAINT &
DEMAND FOR JURY TRIAL**

Plaintiff David L. Bueker, individually and on behalf of all other persons similarly situated, brings this complaint for damages against defendant Keller Williams Realty, Inc. ("Keller Williams" or "Defendant").

**NATURE OF ACTION**

1.      This is a class action claim arising from a breach of contract by Keller Williams, unjust enrichment to Keller Williams relating to payments owed under the Keller Williams Profit Sharing Program, declaratory judgment seeking a declaration of this Court that any changes reducing Profit Sharing Program distributions earned by and owed to vested Profit Sharing Program participants cannot be made retroactive, and temporary and permanent injunctive relief prohibiting Keller

Williams from reducing the Profit Sharing Program distributions to vested plan participants.

2.      The Profit Sharing Program was developed to be a way to reward those associates who helped build the company.

3.      Keller Williams used the Profit Sharing Program as a way to encourage the recruitment of top associates to Keller Williams by Keller Williams associates.

4.      The Profit Sharing Program was designed to be an open-ended profit sharing program that allowed Keller Williams associates, investors, Team Leaders, Market Center staff, Keller Williams staff, and Regional Directors to participate in profits they helped to create without assuming any financial risk.

5.      Eligibility to participate in the Profit Sharing Program was determined by contributing to the growth of Keller Williams by recruiting new sales associates to any Market Center located anywhere in the United States or Canada.

6.      Funds in the Profit Sharing Program were distributed in a multi-tiered format based upon the sponsorship of one associate or employee by another associate or employee.

7.      Keller Williams associates participated in the Profit Sharing Program by recruiting other associates who contribute to the profitability of a Keller Williams Market Center.

8.      Persons recruited into Keller Williams were required to name the sponsor that recruited them for purposes of calculating Profit Sharing Program

distributions.  Associates recruited to Keller Williams by more than one person were required to name one person as their sponsor.

9.     Persons recruited into Keller Williams by a named sponsor were designated or identified as the "down line" of the sponsor.

10.     New associates with Keller Williams were instructed that choosing a sponsor was a very important decision and that the person selected would remain their sponsor for life.

11.     New associates with Keller Williams were further instructed that their sponsor should be the person most instrumental in bringing them into serious discussions with Keller Williams.

12.     Individuals in leadership positions with Keller Williams were instructed that they were to ensure new associates name the person who actually referred them to Keller Williams as their sponsor.

13.     New associates with Keller Williams were instructed that they should consider how they stacked the Keller Williams Profit Share and Growth Share tree and that they should do that in such a way that maximizes the profit share and growth share that they would receive.

14.     Under the Profit Sharing Program there were seven levels of sponsorship.

15.     A Level One sponsor was the person who directly recruited an associate to become affiliated with a Keller Williams Market Center.

16.     A Level Two sponsor was the person who directly recruited a Keller Williams associate's Level One sponsor.

17.     A Level Three sponsor was the person who directly recruited a Keller Williams associate's Level Two sponsor.

18.     A Level Four sponsor was the person who directly recruited a Keller Williams associate's Level Three sponsor.

19.     A Level Five sponsor was the person who directly recruited a Keller Williams associate's Level Four sponsor.

20.     A Level Six sponsor was the person who directly recruited a Keller Williams associate's Level Five sponsor.

21.     A Level Seven sponsor was the person who directly recruited a Keller Williams associate's Level Six sponsor.

22.     Sponsors of associated share in the Profit Sharing Contribution generated by an associates closed sales based upon the following schedule:

    a.  Level 1 – 50%;

    b.  Level 2 – 10%;

    c.  Level 3 – 5%;

    d.  Level 4 – 5%;

    e.  Level 5 – 7.5%;

    f.  Level 6 – 10%; and

    g.  Level 7 – 12.5%.

23.    Keller Williams associates who had an anniversary date before April 1, 2020, became **permanently vested** in the Profit Sharing Program after being associated with a Keller Williams Market Center, or combination of Market Centers, for three consecutive years. (emphasis added)

24.    After becoming vested in the Profit Sharing Program, a Keller Williams associate with an anniversary date before April 1, 2020, **was not required to continue to work as an associate with a Keller Williams Market Center to remain in the Profit Share Program**. (emphasis added)

25.    For individuals who were vested in the Profit Share Program, future payments under the Profit Share Program were payable to the estate of the vested participant or to a designated beneficiary established by either the Binding Sponsorship Agreement or by a more current Designation or Change of Beneficiary Form.

26.    According to the Keller Williams Policies & Guidelines Manual ("Policies & Guidelines Manual"), Keller Williams did not have the right to terminate the Profit Share Program.

27.    According to the Policies & Guidelines Manual, Keller Williams did not have the right to amend any aspect of the Profit Share Program method of calculating a Market Center's Profit Sharing Contribution or a recruiting sponsor's profit sharing distribution except as specifically directed by the International Associate Leadership Counsel ("IALC").

28.     According to the Policies & Guidelines Manual, **any amendment to the Profit Share Program would be prospective only** and would not affect a Market Center or a recruiting sponsor with respect to Profit-Sharing Contributions owed or profit sharing distributions earned prior to the effective date of the termination or amendment. (emphasis added)

29.     A report was presented to the Keller Williams International Associate Leadership Council ("IALC") on August 14, 2019, by Matt Green regarding the findings of the Profit Share Task Force.

30.     Mr. Green reported that in the last year, approximately $25 million to $40 million was paid in profit sharing distributions to non-Keller Williams participants who are directly competing with Keller Williams.

31.     Mr. Green further reported that the Profit Share Task Force considered how changes in the Profit Share Program would align with the belief system and values of Keller Williams.

32.     Mr. Green stated that the Profit Share Task Force recognized that former Keller Williams associates who were competing against Keller Williams while also receiving Profit Share Program distributions both joined Keller Williams at a time and left Keller Williams at a time when the Keller Williams policies committed to the ongoing payment of Profit Share Program distributions to those associates regardless of whether they joined another company and were competing against Keller Williams.

33.     On February 15, 2020, the Keller Williams IALC met at the Kay Bailey Hutchison Convention Center in Dallas, Texas.

34.     During the February 2020, Keller Williams IALC meeting, Mr. Green presented to the IALC read a motion and rationale presented by the Profit Share Task Force for amending the Policies & Guidelines Manual section regarding vesting in the Profit Share Program.

35.     Mr. Green stated that the Profit Share Task Force did not believe there should be a change in the vesting rules for those associates who had built Keller Williams to that point in time.  However, the Profit Share Task Force did recommend that associates joining Keller Williams in the future should have higher standards for becoming vested in the Profit Share Program.

36.     The IALC considered, and passed amendments to the Policies & Guidelines Manual section related to vesting in the following ways:

a.  The phrase "would be permanently vested in the Profit Sharing Program" for associates with an Anniversary Date prior to April 1, 2020, was replaced by the phrase "are vested in the Profit Sharing Program";

b.  The phrase "[f]or any associate that joins Keller Williams on or after April 1, 2020, and remains affiliated with Keller Williams for 7 consecutive years, they are vested" was added to the vesting section of the Policies & Procedures Manual.

    c.   The accompanying NOTE to the vesting section in the Policies & Guidelines Manual providing that "At such time as an associate is vested, there will be no requirement to continue to work as an associate with a Market Center in order to remain in the Profit Sharing Program." In place of this sentence a sentence was added to the vesting section that stated "[e]xcept as otherwise removed by virtue of other provisions in this Policies & Guidelines Manual, at such time as an associate is vested, there is no requirement to continue to remain affiliated with Keller Williams in order to remain in the Profit Sharing Program."

37.    Despite this, on August 16, 2023, the Keller Williams IALC met at the Austin Convention Center in Austin, Texas, and voted on and approved a motion to change the terms of the Profit Share Program.

38.    The changes made by the IALC in August 2023 affected vested Profit Sharing Program participants with a Keller Williams anniversary date of April 1, 2020, or earlier.

39.    The IALC changed the Profit Sharing Program for three categories of vested participants with a Keller Williams anniversary date on or before April 1, 2020:

    a.   persons who are currently an owner, contractor, employee or affiliate of a non-Keller Williams brokerage;

      b.  persons who disassociate themselves from a Keller Williams brokerage or who is no longer employed by Keller Williams and joins a non-Keller Williams brokerage or otherwise competes with Keller Williams or its franchises; or

      c.  persons who directly or indirectly attempts to induce an associate, staff member, or owner of any Keller Williams brokerage to affiliate with a non-Keller Williams brokerage.

("Effected Participants")

40.    With the August 2023 changes to the Profit Sharing Program, the IALC designated Effected Participants as "Vested Competing Associates."

41.    The IALC changed the terms of the Profit Sharing Program for Effected Participants and reduced the monthly Profit Sharing distribution from down to 5% of what they are owed.  They are owed the full amount because they are vested and earned this amount when they recruited sales associates to join Keller Williams.

42.     In an effort to force Effected Participants to return to work with Keller Williams, the IALC included a provision that Effected Participants could return to Keller Williams within six months of receiving notice that their Profit Sharing Program was to be reduced and have the distribution reinstated to 100% payment.

43.    Anticipating that the changes to the Profit Sharing Program were a breach of contract of other actionable conduct, the IALC added a provision in the section regarding termination or amendment of the Profit Sharing Program that stated "Administration and Defense of the Profit Sharing Program.  Any and all funds

in the Profit Share program may be utilized by KWRI for administration or defense of the Profit Share program, including to cover all costs, attorneys' fees, expenses, sums of money, debts, interest, losses, damages, settlements, fines, penalties, assessment, and judgments incurred, levied or resulting from any claims or disputes relating to the Profit Share program."

## **PARTIES**

44.     Plaintiff David L. Bueker is a resident and citizen of the state of Missouri.

45.     Plaintiff brings this action on his own behalf and as a representative of a class of persons had an Anniversary Date before April 1, 2020, and are designated by Keller Williams as being a Vested Competing Associate and have, or will have, payments under the Profit Sharing Program reduced from 100% of what they are owed down to only 5%.

46.     Plaintiff brings this action on his own behalf and as representatives of a class of similarly situated persons to recover damages for breach of contract, unjust enrichment, declaratory judgment and/or temporary and permanent injunctive relief against defendant Keller Williams.

47.     Specifically, Plaintiff was a sales associate with Keller Williams from 2003 to 2011.

48.     From 2006 to 2011, Plaintff was an Operating P

49.     Plaintiff was vested in the Keller Williams Profit Sharing Program before April 1, 2020.

50.    Plaintiff left Keller Williams in 2011.

51.    Plaintiff was selected as the Permanent Sponsor of new sales associates he recruited to Keller Williams.

52.    As a result of his recruitment of sales associates to join Keller Williams, Plaintiff developed a "down line" of Keller Williams sales associates from which he has received Profit Sharing Program distributions.

53.    Plaintiff is now is a sales associate with Red Key Realty Leaders in Chesterfield, Missouri.

54.    Plaintiff meets the definition of a Vested Competing Associate under the Keller Williams Policies & Guidelines Manual dated February 2, 2024.

55.    Plaintiff has, or faces the imminent threat of having, his distributions under the Profit Sharing Program reduced from 100% to 5% unless he chooses to return to Keller Williams within six months of receiving notice that his Profit Sharing Program distribution will be reduced.

## JURISDICTION AND VENUE

56.    Plaintiff is a resident and citizen of the State of Missouri.

57.    Defendant Keller Williams is a resident and citizen of the State of Texas.

58.    Keller Williams has its corporate headquarters in Austin, Texas.

59.    As Plaintiff is a resident and citizen of the State of Missouri and defendant Keller Williams is a resident and citizen of the State of Texas, complete diversity exists.  As the amount in controversy exceeds $75,000, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332.

60.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because (1) Plaintiff brings this action on behalf of a class which is expected to include more than 100 persons, (2) Plaintiff and Defendant Keller Williams are citizens of different states, and (3) the aggregate amount in controversy is expected to exceed $5 million. *See* 28 U.S.C. § 1332(d). Plaintiff is bringing a putative nationwide class that includes all persons who meet the definition of Vested Competing Associates under the February 1, 2024, Keller Williams Policies & Guidelines Manual.

61.     This Court has personal jurisdiction over defendant Keller Williams pursuant to Mo. Rev. Stat. §506.500 in that Defendant transacted business within the State of Missouri.

62.     This Court has personal jurisdiction over defendant Keller Williams pursuant to Mo. Rev. Stat. §506.500 in that Defendant made a contract with Plaintiff in the State of Missouri and that contract is the subject of this action.

63.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that a substantial part of the events that gave rise to the claims in this case occurred in this District in that Plaintiff entered into a contract and agreement with Keller Williams to both work as an associate with Keller Williams and to operate a Keller Williams Market Center in and around St. Louis, Missouri.

## CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this class action pursuant to Rule 23, Federal Rules of Civil Procedure, on behalf of himself and the following class of similarly situated

persons: all persons who participate in the Keller Williams Profit Sharing Program who meet the definition of a Vested Competing Associate:

    a. A "Nationwide Class" based on claims of breach of contract, declaratory judgment, and unjust enrichment; or

    b. A "Missouri Sub-Class" based on claims of breach of contract, declaratory judgment, and unjust enrichment.

65.    Excluded from each Class or Sub-Class are the judicial officers assigned to this litigation, members of their staffs, and immediate families.

66.    The proposed Nationwide Class or Missouri Sub-Class meet all requirements for class certification. The Class or Sub-Class satisfy the numerosity standards. The Class or Sub-Class are believed to number in the hundreds of persons. As a result, joinder of all Class or Sub-Class Members in a single action is impracticable. Class or Sub-Class Members may be informed of the pendency of this Class Action by, among other methods, direct, published and/or broadcast notice.

67.    There are questions of fact and law common to the Nationwide Class or Missouri Sub-Class which predominate over any questions affecting only individual members. The questions of law and fact common to the Class or Sub-Class arising from Defendants' actions include, without limitation, the following:

    a.    Whether defendant Keller Williams breached the contract with persons who meet the definition of Vested Competing Associate by changing the terms and conditions of the contractual

agreement and depriving Class or Sub-Class members of payments due under the Profit Sharing Program; and/or

b.     Whether the changes to the Profit Sharing Program enacted by the IALC, as applied to persons defined as Vested Competing Associates is a retrospective in affect and is, therefore, a breach of contract.

68.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

69.    A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members or Sub-Class Members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for defendant Keller Williams, and/or substantially impair or impede the ability of Nationwide Class Members or Missouri Sub-Class Members to protect their interests.

70.    The claims of Plaintiff are typical of the claims of members of the Nationwide Class and the Missouri Sub-Class. Upon information and belief, the Profit Sharing Program is applied and administered based upon defined criteria for participation and distributions under the Profit Sharing Program are based upon a defined set of calculations. Upon information and belief, the terms of the Profit

Sharing Program were and are identical for Plaintiff and all Nationwide Class or Missouri Sub-Class members.

71.    Plaintiff is an adequate representative of the Nationwide Class and Missouri Sub-Class because he is a member of both Classes and his interests do not conflict with the interests of the members of the Nationwide Class or Missouri Sub-Class he seeks to represent. The interests of the members of the Nationwide Class or Missouri Sub-Class will be fairly and adequately protected by the Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex class action litigation.

72.    Plaintiff seeks payment all monies owed under the Profit Sharing Program for Vested Competing Associates without reduction from 100% to 5%.

73.    Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the Nationwide Class or Missouri Sub-Class who suffered harm to bring a separate action given the damages at issue compared to the costs of litigating each individual claim. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Nationwide Class Members or Missouri Sub-Class Members.

74.    Class action treatment of the claims in this action is the superior method of resolution with respect to concerns of efficiency, fairness and equity over other available methods of adjudication.

75.     Class action treatment is appropriate in this case because defendant Keller Williams is acting, or will act, in a manner generally applicable to – and often identical to – each member of the Nationwide Class or Sub-Class. Defendant will make identical reduction to payments due under the Profit Sharing Program for all Vested Competing Associates.

76.     Notice can be provided to Class Members or Sub-Class Members by use of records in possession of defendant Keller Williams and by using techniques and forms of notice similar to those customarily used in other complex class actions.

## CLAIMS FOR RELIEF

## COUNT I – BREACH OF CONTRACT

77.     Plaintiff re-alleges and incorporates here all above allegations in this Complaint.

78.     As described above, defendant Keller Williams offered to Plaintiff, and other Class Members and Sub-Class Members, the opportunity to participate in the Profit Sharing Program by, among other things, recruiting sales associates to Keller Williams Market Centers in the United States and Canada.

79.     As described above, defendant Keller Williams offered to Plaintiff, and other Class Members and Sub-Class Members, the opportunity to become vested in the Profit Sharing Program by being associated with a Keller Williams Market Center, or combination of Market Centers, for three consecutive years.

80.     As described above, the Profit Sharing Program could not be terminated by defendant Keller Williams.

81.     As described above, any termination or amendment to the Profit Sharing Program would be prospective only and would not affect profit sharing distributions earned prior to the effective date of the termination or amendment.

82.     Plaintiff, and other Class Members and Sub-Class Members, accepted the offer to participate in the Profit Sharing Program and to become vested in the Profit Sharing Program in the following ways:

       a.  By recruiting other associates who contributed to the profitability of a Keller Williams Market Center in the United States and Canada;

       b.  By becoming permanently vested in the Profit Sharing Program through being associated with a Keller Williams Market Center, or combination of Market Centers, for three consecutive years;

83.     Defendant Keller Williams, Plaintiff, Class Members and/or Sub-Class Members received consideration for the contract and promises described above. Specifically, defendant Keller Williams received consideration in the form of the benefit of active recruitment of new associates who contributed to the profitability of a Market Center.  Defendant Keller Williams also received the benefit of Plaintiff, and Class Members or Sub-Class Members, being associated with a Keller Williams Market Center, or combination of Market Centers, for three consecutive years.

84.     Plaintiff, and Class Members or Sub-Class Members, received consideration in the form of entitlement to future payments through the Profit Sharing Program based upon the profitability of Keller Williams associates in their Profit Sharing Program "down line."

85.     Entitlement to Profit Sharing Program distributions continued following departure from Keller Williams for Plaintiff and other individuals with an Anniversary Date on or before April 1, 2020.

86.     Prior to August 2023, for Plaintiff and other individuals with an Anniversary Date on or before April 1, 2020, the Profit Sharing Program did not have any limitation or restriction on competition with or against Keller Williams after departure from Keller Williams.

87.     The changes to the Profit Sharing Program enacted in August 2023, are retrospective in effect on Plaintiff and Class Members or Sub-Class Members. Designation as a Vested Competing Associate changes Plaintiff and Class Members or Sub-Class Members entitlement to 100% distribution of profit share from the "down line" to 5% of the profit share from the "down line."

88.     As a result of the breach of contract by defendant Keller Williams, Plaintiff and Class Members or Sub-Class Members suffered economic damages.  The damages suffered by Plaintiff and Class Members or Sub-Class Members can be calculated with a reasonable degree of certainty in the form of payment of money owed under the Profit Share Program without reduction due to designation as a Vested Competing Associate.

89.     Plaintiff and Class Members or Sub-Class Members also seek injunctive relief to prevent defendant Keller Williams from applying any future reduction to Profit Sharing Program distributions based upon a designation as a Vested Competing Associate.

WHEREFORE, Plaintiff prays for judgment against defendant Keller Williams for actual damages in excess of the jurisdictional limit as determined at trial, injunctive relief, for the costs of this action, attorney's fees, and for such further relief as the Court deems fair and reasonable.

## COUNT II – DECLARATORY JUDGMENT

90.     Plaintiff re-alleges and incorporates here all above allegations in this Complaint.

91.     Pursuant to 28 U.S.C. §2201 *et seq.* this court has the authority to construe, declare and determine the rights, status and legal relations under the contract in this case, including the contractual terms of the Profit Sharing Program and the applicable Keller Williams Policies & Guidelines Manuals.

92.     Pursuant to Mo. Rev. Stat. §527.010 *et seq.* this court has the authority to construe, declare and determine the rights, status and legal relations under the contract in this case, including the contractual terms of the Profit Sharing Program and the applicable Keller Williams Policies & Guidelines Manuals.

93.     As set forth above, Plaintiff and other Class Members or Sub-Class Members with an Anniversary Date on or before April 1, 2020, were vested in the Profit Sharing Program after three continuous years with a Keller Williams Market Center.

94.     As described above, after becoming vested in the Profit Sharing Program, a Keller Williams associate with an Anniversary Date on or before April 1,

2020, was not required to continue to work as an associate with a Keller Williams Market Center to remain in the Profit Sharing Program.

95.    The Profit Sharing Program and Keller Williams Policies & Guidelines Manual provided for distribution from "down line" associates of a designated sponsor for up to seven levels.

96.    The Profit Sharing Program and Keller Williams Policies & Guidelines Manual provided for varying percentages of profits from a "down line" associate, ranging from 50% to 5%.

97.    The Profit Sharing Program and Keller Williams Policies & Guidelines Manual provided that any termination or amendment to the Profit Sharing Program would be prospective only and would not affect a Market Center or a recruiting sponsor with respect to Profit-Sharing Contributions owed or profit sharing distributions earned prior to the effective date of the termination or amendment.

98.    The August 2023, amendments to the Profit Sharing Program and Keller Williams Policies & Guidelines Manual reducing Profit Sharing Program distributions from 100% of what is earned and owed down to 5% for persons designated as Vested Competing Associates is retrospective in affect and violates the terms of the contractual agreement between Plaintiff, Class Members, and Sub-Class Members and defendant Keller Williams.

Wherefore, Plaintiff requests declaratory judgment that 1) the Profit Sharing Program cannot be amended to retroactively reduce or eliminate entitlement to Profit Sharing distributions owed to vested plan participants with an Anniversary Date on

or before April 1, 2020; and 2) that Keller Williams cannot reduce Profit Sharing Program distributions to persons designated as Vested Competing Associates from 100% to 5%.

### COUNT III - UNJUST ENRICHMENT

99.   Plaintiff re-alleges and incorporates here all above allegations in this Complaint.

100.   Keller Williams used the Profit Sharing Program to encourage the recruitment of top associates to join Keller Williams by associates at Keller Williams.

101.   As described above, the Profit Sharing Program was developed to be a way to reward those associates who built the company through recruitment of top associates to Keller Williams.

102.   As described above, the Profit Sharing Program provided that a Keller Williams associate with an Anniversary Date on or before April 1, 2020, was vested in the Profit Sharing Program after three continuous years associated with a Keller Williams Market Center or combination of Keller Williams Market Centers.

103.   As described above, the Profit Sharing Program provided that a Keller Williams associate with an Anniversary Date on or before April 1, 2020, was not required to continue to work as an associate with a Keller Williams Market Center to remain in the Profit Sharing Program.

104.   As described above, the Profit Sharing Program and Keller Williams Policies & Guidelines Manual provided that any termination or amendment to the Profit Sharing Program would be prospective only and would not affect a Market

Center or a recruiting sponsor with respect to Profit-Sharing Contributions owed or profit sharing distributions earned prior to the effective date of the termination or amendment.

105.    Defendant Keller Williams continues to be enriched by and receive the benefit of profits generated by sales associates recruited to join Keller Williams by persons designated as Vested Competing Associates.

106.    The benefit received by defendant Keller Williams was at the expense of Plaintiff and Class Members or Sub-Class Members in that he and they expended time, energy and effort to recruit top sales associates to join Keller Williams.

107.    To allow defendant Keller Williams to retain the benefit of the profits generated by sales associates recruited by Plaintiff and Class Members or Sub-Class Members would be unjust when Keller Williams encouraged and enticed Plaintiff and Class Members or Sub-Class Members to put forth such efforts.

WHEREFORE, Plaintiff pray for judgment against Defendants for actual damages in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT IV – PRELIMINARY INJUNCTION

108.    Plaintiff re-alleges and incorporates here all above allegations in this Complaint.

109.    Plaintiff requests that this Court enter a preliminary injunction specifically prohibiting the redistribution of disputed payments under the Profit Sharing Program.

110.    According to the August 2023, changes to the Profit Sharing Program, funds that were designated to be paid to Vested Competing Associates are to be redistributed to Profit Sharing Program Participants.

111.    As demonstrated above, based upon the plain language of the Keller Williams Policies & Guidelines Manual, Profit Sharing Program participants were vested in the Profit Sharing Program after three continuous years associated with a Keller Williams Market Center or combination of Keller Williams Market Centers.

112.    Based upon the plain language of the Keller Williams Policies & Guidelines Manual, any termination or changes to the Profit Sharing Program for vested participants were to be prospective only.

113.    Given that Plaintiff, Class Members and Sub-Class Members were vested in a Profit Sharing Program that could only be prospectively amended, the likelihood of success on the merits is high.

114.    To the extent that disputed Profit Sharing Program funds are distributed to other Profit Sharing Program participants during the pendency of this action, Plaintiff, Class Members and Sub-Class Members risk suffering irreparable harm absent an injunction because Profit Sharing Program funds will be distributed without any method or ability to recapture those funds from the recipients.

115.    On balance, the risk of great harm to Plaintiff, Class Members and Sub-Class Members is great while the harm or potential prejudice to other interested parties is slight.  Plaintiff, Class Members and Sub-Class Members are at risk of losing the ability to reclaim or recapture improperly paid Profit Sharing Program

funds. Alternatively other interested parties who would receive a windfall at the expense of Plaintiff, Class Members and Sub-Class Members should this Court determine issues in favor of Plaintiff, Class Members and Sub-Class Members. Furthermore, other interested Profit Sharing Program participants would continue to receive the amounts otherwise owed to them under the plain language of the Profit Sharing Program

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against defendant Keller Williams as follows:

a.  That the Court enter an order certifying the Class, appointing Plaintiff as representative of the Nationwide Class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Nationwide Class;

b.  Alternatively, that the Court enter an order certifying the Missouri Sub-Class, appointing Plaintiff as representative of the Missouri Sub-Class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Missouri Sub-Class;

c.  For a judgment against Defendant for the causes of action alleged against it;

d.  For damages in an amount to be proven at trial;

e.     For declaratory judgment that any changes to the Profit Sharing Program not be retroactively applied so as to reduce the amount of distribution owed under the Profit Sharing Program to Plaintiff and other Class Members or Sub-Class Members who are designated as, or may be designated as, Vested Competing Associates from 100% to 5%;

f.     For appropriate temporary injunctive relief, enjoining defendant Keller Williams from taking any action to reduce the amount of distribution owed under the Profit Sharing Program to Plaintiff and other Class Members or Sub-Class Members who are designated as, or may be designated as, Vested Competing Associates from 100% to 5%;

g.     For an award of attorney's fees;

h.     For costs incurred; and

i.     For such other relief in law or equity as the Court deems just and proper.

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,


_____ */s/ Paul D. Anderson*_____
Paul D. Anderson
Kenneth B. McClain        (To be admitted pro hac vice)
Jonathan M. Soper         (To be admitted pro hac vice)
Kevin D. Stanley          (To be admitted pro hac vice)
HUMPHREY, FARRINGTON & MCCLAIN, P.C.
221 West Lexington Ave., Ste. 400
Independence, MO 64051
(816) 836-5050
(816) 836-8966 –fax
pda@hfmlegal.com
kbm@hfmlegal.com
jms@hfmlegal.com
kds@hfmlegal.com

ATTORNEYS FOR PLAINTIFF